UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA

v.                                                          Action No. 3:08–CR–78

SHON McHUGH,

Defendant.

MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion for Reconsideration by Shon McHugh, who argues that the Court should have granted his Motion to Suppress. After carefully considering the parties' arguments and the transcript of the testimony that was offered at the hearing on that Motion, the Court agreed. On July 14, 2008, the Court granted McHugh's Motion for Reconsideration, vacating its Order denying the Motion to Suppress and granting that Motion. This Memorandum Opinion explains the Court's decision.

1.    Background

On January 30, 2008, McHugh was driving a 1997 Ford Expedition with Massachusetts license plates north on I-95 in Greensville County, Virginia. (Criminal Compl. at 1.) A Virginia State Police trooper, Michael H. Miller, who was parked next to the highway, "observed improper equipment" on the Expedition as it passed him. (Criminal Compl. 1; Tr. of Hr'g on McHugh's Mot. to Suppress ["Tr."] 3, 5, May 14, 2008.) Noticing that the vehicle did not have Virginia license plates, Trooper Miller followed

1

McHugh.  (Tr. 6, 16.)  When Trooper Miller caught up with the Expedition, he observed

that taillights with clear lenses and front turn-signal lights with clear lenses and blue bulbs

had been installed on the vehicle.  (Tr. 6, 8.)  He was able to see the equipment clearly.

(Tr. 6, 13.)  After confirming with another Virginia State Trooper that "the taillights" did not

comply with Virginia law, Trooper Miller directed McHugh to stop his vehicle.  (Tr. 14–15.)

As McHugh did so, Trooper Miller noticed that the Expedition's taillights emitted red light.

(Tr. 18.)

    After McHugh stopped his vehicle, Trooper Miller inspected its taillights and front

turn-signal light.  He found that the lenses on the vehicle's rear brake lights and taillights –

the "clear plastic cover[s]" over the lights – were clear, but that the taillights' bulbs and

reflectors were red.  (Tr. 8, 18, 19.)  Some clear after-market lenses have not been

approved by Virginia, but Trooper Miller noticed that the lenses on McHugh's Expedition

were stamped with markings that indicated that they probably had been approved by the

Superintendent of the Virginia State Police ("the Superintendent").[1]  (Tr. 8–10, 24.)  In

addition, Trooper Miller confirmed that the front turn-signal lights on the vehicle had clear

lenses and blue bulbs.  (Tr. 12–14.)  But, he did not give McHugh a ticket for any of the

equipment on the vehicle.  (Tr. 19.)

    However, Trooper Miller noticed that there was only one key on McHugh's key

chain and observed energy drinks, air fresheners, and a CB radio in the vehicle.  (Gov't's

---

[1] Trooper Miller testified that lenses that have been approved by the Superintendent
"usually" have certain markings (i.e., numbers issued by the Society of Automotive
Engineers or the federal Department of Transportation), which cannot be observed without
inspecting a lens closely.  (Tr. at 8–9, 11, 15.)

Resp. to McHugh's Mot. to Suppress ["Resp."] 1–2.)  Trooper Miller asked for and received

McHugh's consent to search the Expedition.  (Resp. 2.)  He discovered six kilograms of

cocaine hydrochloride, one-half pound of marijuana, and approximately one hundred pills

that the government alleges are Oxycodone.  (Criminal Compl. 1.)  Consequently, he

arrested McHugh.

McHugh asked the Court to suppress the evidence that Trooper Miller discovered,

on the ground that he was stopped without justification.  On May 29, 2008, the Court

denied McHugh's Motion to Suppress.  The Court ruled that, while McHugh's Expedition

did not have to comply with Virginia statutes regulating brake lights and turn signals

because the vehicle was not registered in Virginia, it had to comply with section 46.2–1013

of the Virginia Code, which requires "[e]very motor vehicle" to "carry at the rear two red

lights" that are "of a type approved by the Superintendent."  And, the Court concluded

that, while Trooper Miller stopped McHugh because the officer mistakenly believed that the

tail lights on McHugh's vehicle were clear, Trooper Miller's error was a reasonable mistake

of fact.  See United States v. McHugh, No. 3:08–CR–78, slip op. at 5–6 (E.D. Va. May 29,

2008).  Accordingly, the Court found that the stop was justified.

Now, McHugh contends that Trooper Miller's testimony at the hearing on the Motion

to Suppress demonstrates that he realized that the Expedition's taillights were red, but that

he stopped McHugh because he believed – incorrectly – that the clear lenses on the taillights

did not comply with Virginia law.  That mistake of law, McHugh argues, cannot justify the

stop.

2.      Standard of review

    A.      Reconsideration

A court may reconsider a ruling denying a motion to suppress.  See, e.g., United States v. Morrison, 429 U.S. 1, 1 (1976) (per curiam).  Under Federal Rule of Civil Procedure 59(e) – which the Fourth Circuit has cited in the context of an appeal of a ruling denying a motion to suppress, see United States v. Foreman, 369 F.3d 776, 784 n.8 (4th Cir. 2004) – a court may reconsider a ruling to "correct a clear error of law or fact or to prevent manifest injustice."  Max's Seafood Cafe ex rel. Lou Ann v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  To decide that it made a "clear error," a court must have a "definite and firm conviction that a mistake [was] committed."  Easley v. Cromartie, 532 U.S. 234, 242 (2001); cf. United States v. Jasin, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) (applying Easley in the context of a motion for reconsideration).  To constitute "manifest injustice," an error must be "obvious."  In re Oak Park Calabasas Condominium Ass'n, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003).

    B.      Suppression

The United States Constitution forbids "unreasonable searches and seizures."  U.S. Const. amend. IV.  Since a traffic stop constitutes a "seizure" in the context of the Fourth Amendment, Delaware v. Prouse, 440 U.S. 648, 653 (1979), a police officer may conduct "a brief, investigatory stop" only if he or she has at least "a reasonable, articulable suspicion that criminal activity is afoot," Illinois v. Wardlow, 528 U.S. 119, 123 (2000); accord United

<u>States v. Reaves</u>, 512 F.3d 123, 126 (4th Cir. 2008)[2] – for example, that a traffic law was

violated, <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996).

The fact that a suspicion was based on a mistaken belief does not make the

suspicion (or the stop that it motivated) unreasonable, provided that the error was a

reasonable mistake of fact.[3]  <u>See, e.g.</u>, <u>United States v. Cousins</u>, 2008 WL 2648899, at *2

(4th Cir. July 7, 2008) (unpublished).

In contrast, the Fourth Circuit has suggested that a mistake of law cannot justify a

stop, even if the mistake was reasonable.[4]  <u>See</u> <u>United States v. Arias</u>, 213 F. App'x 230,

_____

[2] The "reasonable suspicion" standard is not especially demanding, requiring more than a
"hunch" but "considerably less" proof than does the "preponderance of the evidence"
standard.  <u>Illinois</u>, 528 U.S. at 123–24.  In evaluating whether a stop was justified, a court
must consider the totality of the circumstances in which the stop was made.  <u>United States
v. Sokolow</u>, 490 U.S. 1, 7 (1989).

[3] In a different context – a stop that can be justified objectively, but that was allegedly based
on a hunch that could not be articulated – the intent or motivation of the officer who made
the stop does not matter.  <u>See, e.g.</u>, <u>Ohio v. Robinette</u>, 519 U.S. 33, 38 (1996); <u>Whren</u>, 517
U.S. at 813.  According to <u>Whren</u>, that rule governs "ordinary ... Fourth Amendment
analysis."  517 U.S. at 813.  But, many courts have examined officers' beliefs after <u>Whren</u>,
suggesting that the rule applies only if a stop was allegedly based on an ulterior motive.
Since McHugh does not contend that Trooper Miller's beliefs about the equipment on the
Expedition were merely a pretext for stopping him, those beliefs are relevant.

[4] That position has been adopted by most of the circuits that have addressed this issue.
<u>See, e.g.</u>, <u>United States v. Booker</u>, 496 F.3d 717, 722 (D.C. Cir. 2007); <u>United States v.
McDonald</u>, 453 F.3d 958, 961 (7th Cir. 2006) (citing decisions by four other circuits).  <u>But
see, e.g.</u>, <u>United States v. Delfin-Colina</u>, 464 F.3d 392, 397 (3d Cir. 2006) (ruling that a
mistake of law justified a stop); <u>United States v. Bueno</u>, 443 F.3d 1017, 1024–25 (8th Cir.
2006) (ruling that a reasonable mistake of law justified a stop).
However, the Fourth Circuit recently ruled that a stop was valid, even though it was
based on a mistake of law, because there was a different, valid basis for the stop.  <u>See
Cousins</u>, 2008 WL 2648899, at *2.  And, other courts have held that an officer's mistake
about <u>why</u> a defendant's conduct was illegal does not invalidate a stop, provided that the
defendant was actually breaking a law.  <u>See, e.g.</u>, <u>United States v. Wallace</u>, 213 F.3d 1216,

232–33 (4th Cir. 2007) (unpublished); United States v. Johnson, 256 F.3d 214 (4th Cir.

2001).  In Arias, the court ruled that a stop was justified because it was based on a

reasonable mistake of fact.  See 213 F. App'x at 233.  But, in the course of arriving at that

conclusion, the court cited a conclusion by the Eleventh Circuit that a "mistake of law may

not [justify a traffic stop]," id. at 232 (citing United States v. Chanthasouxat, 342 F.3d

1271, 1276 (11th Cir. 2003)).  Although that proposition did not play an essential part in

the court's decision, it is consistent with the court's reasoning in Johnson.  In that case, the

Fourth Circuit ruled that a stop was not valid, since (1) it was made on the basis of a South

Carolina statute that applied only to vehicles that were "required to be registered in [South

Carolina]"; (2) the defendant's car bore a Georgia license plate; and (3) the officer who

conducted the stop did not have any reason to believe that the car was required to be

registered in South Carolina.  256 F.3d at 216–17.  The Fourth Circuit did not describe the

officer's belief about the scope of the statute as a mistake (of law or another kind), but the

court's decision implies that a mistake about the applicability of a statute cannot justify a

stop.

   The Johnson court did not state explicitly that a mistake about whether a law applies

to a defendant (whose conduct clearly did not comply with the law) is a mistake of law.

---

1220 (9th Cir. 2000) (upholding a stop that was made by an officer who believed that
California prohibited window tinting of any kind, noting that (1) only windows that block
more than 30% of the light striking the window are illegal, but (2) the defendant's windows
blocked more than twice that amount of light).  So, a stop that was made on the basis of a
mistake of law is not invalid if it can be justified objectively.

And, no other courts have resolved precisely that issue,[5] although other courts have characterized mistakes about the scope of a law as a mistake of law.  See, e.g., United States v. DeGasso, 369 F.3d 1139, 1144 (10th Cir. 2004); cf. People v. Molenda, 390 N.E.2d 560, 561–62 (Ill. Ct. App. 1979) (invalidating the arrest of people who were loitering near a road for hitchhiking, on the ground that the applicable statute prohibiting hitchhiking applied only to people standing "in a roadway").  In DeGasso, the court concluded that a stop could not be justified on the ground that the defendant was using fog lamps on an overcast – but clear – morning, when the applicable law prohibited the use of fog lamps only if visibility was poor.  Id.  Stating that a "failure to understand [a] plain and unambiguous law" is not reasonable, id., the court suggested that the officer applied the law too broadly.  Since neither the Supreme Court nor the Fourth Circuit has resolved this question explicitly, the Court – following Johnson and on the basis of DeGasso – holds that a mistake about whether a defendant is subject to a law constitutes a mistake of law that cannot justify a stop.

―――――――――――――――

[5] In United States v. Martinez, 512 F.3d 1268, 1272 (10th Cir. 2008), the court ruled that a stop may be justified even if the officer who made it admits that he did not know whether the law on the basis of which he made the stop applied to the defendant.  But, in that case, the law in question actually applied to the defendant.  See id.  And in People v. Estrella, 851 N.Y.S.2d 793, 795 (N.Y. App. Div. 2008), the court upheld a stop made by an officer who did not know whether a vehicle with Georgia license plates was required to comply with a New York statute regulating tinted windshields.  But, the court noted that (1) the facts necessary to determine whether the vehicle was exempt from New York law were not available to the officer, and (2) the officer's reasonable observations suggested that the vehicle did not comply with either New York or Georgia law.  See id.  Ironically, the Estrella court observed that another state's highest court recently ruled that a statute regulating equipment on vehicles that applied only to the residents of that state was unconstitutional because it violated the Equal Protection Clause.  See Ciak v. State, 597 S.E.2d 392 (Ga. 2004).

8

3.      Whether the stop was justified

Here, the United States argues that Trooper Miller's decision to stop McHugh was justified because the officer reasonably believed that the brake lights, turn signals, or taillights on McHugh's vehicle violated Virginia law.  Virginia regulates each of those types of equipment.

A.      Brake lights

First, "[e]very motor vehicle" that is "registered in [Virginia] and operated on the highways in the [state]," with an exception that does not apply to this case, must "be equipped with at least two brake lights of a type [that is] approved by the Superintendent." Va. Code § 46.2–1014.  The brake lights must "exhibit a red or amber light."  Id.  But, section 46.2–1014 explicitly applies only to vehicles that are registered in Virginia.  Since McHugh's vehicle was registered in Massachusetts, not Virginia, it was not required to comply with that statute.  So, if Trooper Miller believed that the Expedition violated any of those provisions, that belief constituted a mistake about the applicability of section 46.2–1014, a mistake of law that cannot justify his decision to stop McHugh.[6]  See Johnson, 256 F.3d at 216–17.

But, the United States argues that the brake lights on the Expedition are subject to provisions that govern lighting equipment on vehicles generally.  Section 46.2–1010 provides that "[e]very vehicle driven or moved on a highway within [Virginia] shall at all

---

[6] Trooper Miller could not have reasonably believed that the Expedition was registered in Virginia – and therefore subject to section 46.2–1014 – since he testified that, before directing McHugh to stop, he noticed that the vehicle bore Massachusetts license plates. (Tr. 16.)

times be equipped with such lights as are required in this chapter for different classes of

vehicles."  Section 46.2–1002 of the Virginia Code specifies that those lights (as well as

other equipment) must have been approved:

> It shall be unlawful for any person ... to use or have as equipment on a motor vehicle operated on a highway any lighting device, warning device, signal device, safety glass, or other equipment for which approval is required by any provision of this chapter or any part or parts tending to change or alter the operation of such device, glass, or other equipment unless [it is] of a type that has been submitted to and approved by the Superintendent or meets or exceeds the standards and specifications of the Society of Automotive Engineers, the American National Standards Institute, Incorporated or the federal Department of Transportation.

And, the Supreme Court of Virginia has emphasized that "motor vehicles operating on the

highways of [Virginia] are required to comply with the statutes relating to lighting

equipment in effect at the time of their operation."  Hall v. Hockaday, 146 S.E.2d 215, 219

(1966).  For this reason, the United States argues, even if section 46.2–1014 does not apply

to the Expedition, Trooper Miller correctly believed that the brake lights were subject to

Virginia law.  Therefore, the government contends, if Trooper Miller mistakenly thought that

the brake lights violated Virginia law because they had not been approved by the

Superintendent, his error was a reasonable mistake of fact.

But, the Court rejects the government's construction of section 46.2–1010.  That

provision requires vehicles to be equipped with "such lights as are required in this chapter

for different classes of vehicles," adding that those lights must be "capable of being lighted"

"at all times."  Va. Code § 46.2–1010 (emphasis added).  But, brake lights that have been

approved by the Superintendent are not required for vehicles that are not registered in

Virginia by any of the statutes in Chapter 10 of Title 46.2.  Thus, while section 46.2–1010

might govern other equipment on the Expedition, it does not create any requirements that apply to that vehicle's brake lights.  For the same reason, Hall entails only that McHugh's Expedition must comply with those statutes that apply to vehicles that are not registered in Virginia – not every statute governing equipment on motor vehicles, regardless of explicit limitations on the scope of those statutes.

Second, interpreting section 46.2–1010 broadly, as applying to vehicles that are not registered in Virginia, would render the "registered in Virginia" clause of section 46.2–1014 meaningless, a result that must be avoided, if possible.[7]  See Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Executives Ass'n, 491 U.S. 490, 510 (1989) (interpreting statutes "to give effect to each [while] preserving their sense and purpose"); see also TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (stating that, if possible, a statute should be construed so that "no clause, sentence, or word [is] superfluous, void, or insignificant.").[8]  In contrast, the Court's

---

[7] While a canon of interpretation is only a guide for determining a legislature's intent, Chickasaw Nation v. United States, 534 U.S. 84, 94 (2001), the Court cannot find any evidence that the Virginia legislature intended to subject vehicles that are not registered in the state to the requirement expressed in section 46.2–1014.  While section 46.2–1010 might be construed as expanding the scope of 46.2–1014, if the Virginia legislature wanted the requirements of section 46.2–1014 to apply to vehicles that are not registered in Virginia, it could have deleted the "registered in Virginia" clause from section 46.2–1014, a much more elegant – and compelling – way of achieving that goal.

[8] A competing canon, the "rule against surplusage," which allows a court to ignore words that were "inadvertently inserted" or are "repugnant" to the force of the rest of the statute, see Chickasaw Nation, 534 U.S. at 94, is not useful in this situation.  The Virginia legislature has enacted many statutes regulating equipment on motor vehicles that explicitly apply only to vehicles that are registered in Virginia.  See, e.g., Va. Code §§ 46.2–1042; 46.2–1048; 46.2–1055.1; 46.2–1056; 46.2–1057.  Since "registered in Virginia" (or an equivalent phrase) appears in several statutes, treating it as an inadvertent or "repugnant" addition to section 46.2–1014 would thwart – not carry out – the Virginia legislature's evident intent.

12

construction of section 46.2–1010 does not render it or section 46.2–1014 superfluous – a desirable result.  See, e.g., Chickasaw Nation v. United States, 534 U.S. 84, 89 (2001) (refusing to adopt a reading that would have had the effect of "rewriting the language of the rest of the statute" at issue).  On the Court's reading, section 46.2–1010 clarifies that the provisions of chapter 46.2 that do not state that they apply only to vehicles that are registered in Virginia (e.g., section 46.2–1013, which the Court discusses below) apply to all vehicles.  Thus, this construction gives meaning to every word in section 46.2–1014, as well as section 46.2–1010.

Similarly, the other general statute on which the United States relies, section 46.2–1002, does not justify Trooper Miller's decision to stop McHugh.  According to that statute, "a motor vehicle operated on a highway" may not have a "lighting device, warning device, [or] signal device" – or equipment that "alter[s] the operation of [those] device[s]" – unless it has been approved by the Superintendent or satisfies standards established by any of three other entities.  See Va. Code § 46.2–1002.  If section 46.2–1002 applied to the Expedition, then Trooper Miller could reasonably have believed that the after-market equipment on the vehicle did not comply with that statute.  Even if that belief were mistaken, Trooper Miller's error would have been a mistake of fact (possibly, a reasonable one).  But, section 46.2–1002 does not apply to vehicles that are not registered in Virginia. If it did, then – because it governs brake lights (a "lighting device" and a "warning device") – it would eviscerate the "registered in Virginia" provision of section 46.2–1014.  Applying the analysis articulated above with respect to section 46.2–1010, the Court rejects that

13

construction.  Since the Expedition did not have to comply with section 46.2–1002,

regardless of whether Trooper Miller correctly believed that any of the equipment on

McHugh's Expedition had not been approved by the Superintendent (or whether, if he was

wrong, his mistake was reasonable), Trooper Miller's decision to stop McHugh cannot be

justified on the basis of the requirements of section 46.2–1002.

Thus, the government cannot rely on Trooper Miller's observations about the brake

lights on the Expedition to justify the stop.

B.      Turn signals

Next, any motor vehicle that is registered in Virginia and "drive[n] on any highway,"

with an exception that does not apply to this case, must be equipped with "electrical turn

signals which meet the requirements of [Title 46.2] and are of a type that has been

approved by the Superintendent."  Id. § 46.2-1038.  In addition, the regulations governing

the inspection of vehicles in Virginia provide that a vehicle's front turn signal must have an

amber lens or a clear lens and an amber bulb, and the color of the lens and bulb may not

be modified.  19 Va. Admin. Code § 30–70–190.

But, section 46.2–1038 explicitly applies only to vehicles that are registered in

Virginia.  Thus, as the Court explained above, since McHugh's vehicle was not registered in

Virginia, if Trooper Miller believed that it violated section 46.2–1038 or those regulations,

that belief constituted a mistake of law that cannot justify his decision to stop McHugh.  See

Johnson, 256 F.3d at 216–17.

14

C.    Taillights

The only statute at issue in this case that applies to any vehicle that is driven on a

highway in Virginia is section 46.2–1013, which requires "every motor vehicle" to "carry at

[its] rear two red lights" that are "of a type approved by the Superintendent."[9]  But, section

46.2–1013 does not state explicitly any component of a taillight must be red, and the

provision has not been given that interpretation in a published opinion.[10]  On the contrary,

the Virginia Supreme Court has distinguished "lighting equipment" from "reflectors,"

implying that "light" does not refer to every component of a lighting device.  Hall, 146

S.E.2d at 219 (interpreting section 46.1–265, a prior version of section 46.2–1017, which

regulates "dimension" or "marker" lights).  And, another state legislature and a federal court

have distinguished taillights from the lenses that cover them, further supporting the

conclusion that "light" should not be interpreted broadly.  See Neb. Rev. Stat. § 60–6,

---

[9] The regulations governing the inspection of vehicles in Virginia provide that the lenses on "rear lamps," or the "lens area [of] combination rear lamps" must be red – without "a dot of another color" – except that clear lenses are acceptable if they are "of an approved type." 19 Va. Admin. Code § 30–70–150(5).  In addition, a vehicle with "replacement tail lamps, commonly sold as 'clear' tail lamps or 'Euro-Tail' lamps[,] [may] not pass inspection if the red lamps and reflectors are replaced with clear ones or the tail lamps are missing the side red marker lamps or reflectors."  Id. note.  However, those requirements do not apply to a vehicle that is not registered in Virginia.  CITE.

[10] In Hall, the Virginia Supreme Court referred to section 46–267 of the Code of 1950, a prior version of section 46.2–1013, but did not suggest that it prohibited taillights with red lenses.  See 146 S.E.2d at 219.  And, in Ragland v. Virginia, 1997 WL 65780, at *2 (Va. Ct. App. 1997), a Virginia Court of Appeals ruled that a stop was justified because the officer who conducted the stop reasonably believed that the defendant was violating Virginia law by driving a vehicle with the "red plastic covering" over one of its taillights out of place, so that the light emitted both red and white light.  But, the Ragland court's ruling was based on section 46.2–1003, which prohibits operating a vehicle with a defective or unsafe taillight.  See id.

219(6)(b) (2008) (referring to "the lens covering each taillight"); Oxford Int'l Corp. v. United States, 1975 WL 27566, at *1 (Cust. Ct. Aug. 27, 1975) (stating that a taillight comprised a light bulb, a reflective surface, and a lens).  Accordingly, the Court interprets section 46.2–1013 as requiring vehicles on Virginia highways to be equipped with two taillights that have red bulbs or emit red light.

So, if Trooper Miller believed that Virginia required the lenses on the taillights of McHugh's Expedition to be red, he applied section 46.2–1013 incorrectly.  Only if Trooper Miller believed that the taillight was clear (or another color other than red) would the officer have made a mistake of fact, one that if it was reasonable would justify his decision to stop McHugh.

After reviewing the transcript of Trooper Miller's testimony, however, the Court concludes that he believed that the taillights themselves were red.  While being shown a photograph of a taillight on McHugh's vehicle, Trooper Miller testified that "I see a red light. And there is what appears to be a red reflector on the side [of the light]."  (Tr. 19.) Although Trooper Miller qualified that testimony by stating that he did not "see a red lens" (Tr. 19), this statement does not undermine McHugh's position, since section 46.2–1013 does not require motor vehicles to have taillights with red lenses.  In addition, the trooper testified that the taillights contained "small red ... separate light[s]," (Tr. 18), further supporting the conclusion that he believed that the lights themselves were red.  Moreover, although Trooper Miller testified that the "lenses over the rear taillight[s]" – the "plastic cover" of each taillight – were clear (Tr. 6, 19) (emphasis added), he did not deny that the

16

taillights themselves were red.  Finally, even if Trooper Miller was mistaken about the color of the taillights before he stopped McHugh, he observed that the taillights emitted red light as McHugh was stopping his vehicle.  (Tr. 18.)  Thus, by the time that Trooper Miller began to conduct the traffic stop, he knew that the taillights on the Expedition were red.

Trooper Miller's testimony does not suggest that he mistook the lens of the taillight for the light itself (which would have constituted a different mistake of fact).  Nor did he state or imply that his impression of the photograph of the taillight was different than his observation when he was pursuing McHugh on I-95 (which would have given the Court a basis for discounting the officer's testimony).  On the contrary, Trooper Miller's testimony indicates that – before he stopped McHugh's vehicle – he believed that the taillights on the vehicle violated section 46.2–1013 because their lenses were clear.  What Trooper Miller reasonably suspected about the taillights – that their lenses were clear – did not constitute a violation of Virginia law, since section 46.2–1013 does not prohibit motor vehicles from being equipped with taillights whose lenses are clear.  So, Trooper Miller's mistake was one of law, not fact.  Accordingly, the mistake does not justify his decision to stop McHugh.[11]

4.    <u>Conclusion</u>

If an officer's beliefs about what the law requires are correct, but he mistakenly believes that a defendant has violated those requirements, the officer's decision to stop the defendant may be valid.  But, if an officer's perceptions of the defendant's conduct are

---

[11] Holding McHugh responsible for failing to comply with a law of which he certainly was ignorant, while justifying a mistake by Trooper Miller – who is "entrusted to enforce the law" – would be egregiously unfair.  <u>See</u> <u>Chanthasouxat</u>, 342 F.3d at 1280.

accurate, but his conception of what the defendant must do to comply with the law is flawed, the stop is not valid.  Here, since Trooper Miller correctly perceived that the taillights on McHugh's Expedition were red with clear lenses, but he incorrectly believed that the equipment on the vehicle violated applicable Virginia statutes, his decision to stop McHugh was not justified.  And, because the record before the Court does not provide any other basis on which the stop could be justified, the Court concluded that the evidence that Trooper Miller discovered must be suppressed.[12]

Accordingly, for the reasons stated above, McHugh's Motion for Reconsideration was GRANTED, the Court's Order denying his Motion to Suppress was VACATED, and the Motion to Suppress was GRANTED.

It was SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Court

ENTERED this   21st   day of July 2008

---

[12] At the hearing on the Motion for Reconsideration, the United States speculated that, if the Court decided that McHugh's Expedition was not subject to Virginia's laws governing turn signals, people from other states would enter Virginia in vehicles equipped with headlights with blue bulbs, confusing the citizens of the state into believing that the foreigners were police officers (since, according to the government, in Virginia only law enforcement vehicles may have blue lights).  If that specter materializes, however, the Court is confident that the Virginia legislature would promptly clarify the scope of the state's laws governing lights on motor vehicles.